### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DANIEL RAY LEONARD,      :

     Petitioner,        :

vs.          : CIVIL ACTION NO. 08-0312-WS-C

UNITED STATES OF      : CRIMINAL ACTION NO. 07-0208-WS
AMERICA,

               :

     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Daniel Ray Leonard, a federal prison inmate, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 67; *see also* Doc. 72). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). It is recommended that Leonard's § 2255 motion be denied.

## FINDINGS OF FACT

1.      On June 18, 2007, a criminal complaint was filed against Daniel Ray Leonard charging him with transmitting in interstate commerce a communication containing a threat to injure the person of another in violation of 18 U.S.C. § 875(c). (Doc. 1) The June 2007 session of the Grand Jury

returned a two-count indictment against petitioner, charging him in both counts with sending in interstate commerce an email communication containing a threat to injure employees of the WPMI television station in violation of 18 U.S.C. § 875(c). (Doc. 8)

2.      On September 12, 2007, Leonard, through his attorney, Joe Carl Jordan, Esquire, notified the Court of his intent to plead guilty to Count Two of the indictment. (*See* Doc. 40)

3.      On October 19, 2007, the parties filed a plea agreement and factual resume in open court. (Doc. 43) The plea agreement, reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, DANIEL RAY LEONARD, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands his rights as follows:

a.      To be represented by an attorney;

b.      To plead not guilty;

c.      To have a trial by an impartial jury;

2

       d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense;

       e.      To not be compelled to incriminate himself/herself.

## **WAIVER OF RIGHTS AND PLEA OF GUILTY**

2.      The defendant waives rights b through e, listed above, and pleads guilty to Count Two of the Indictment, charging a violation of Title 18, United States Code, Section 875(c), Threatening Interstate Communications.

.     .     .

4.      The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges which have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charges. The defendant believes that his attorney has represented him

faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.     A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.     This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he is pleading guilty because he knows that he is guilty.

## **PENALTY**

10.     The maximum penalty the Court could impose as to Count Two of the Indictment is:

   a.     5 years imprisonment;

   b.     A fine not to exceed $75,000;

   c.     A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

   d.     A mandatory special assessment of $100.00; and

   e.     Such restitution as may be ordered by the Court.

4

## SENTENCING

11.     The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## RESTITUTION

16.     Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution, to the following victims in the amounts listed below:

a.     The defendant understands and agrees that the determination of the actual amount of restitution due to WPMI-15 for their security costs in response to the defendant's threats is to be determined by the Court at sentencing.

## UNITED STATES' OBLIGATIONS

17.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss Count One of the Indictment at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

18.     The United States will recommend to the Court that the defendant be sentenced at the **low end of the applicable advisory sentencing guideline range as determined by the Court**.

.     .     .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

20.     The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

21.     With the limited exceptions noted below, the

defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

22.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

       a.     Any punishment imposed in excess of the statutory maximum;

       b.     Any punishment that constitutes an upward departure from the guideline range; or

       c.     A claim of ineffective assistance of counsel.

23.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

## VIOLATION OF AGREEMENT

24.     The defendant understands that if he violates any provision of this agreement, the United States will be free from any obligations imposed by this agreement and will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the 6th Amendment and/or Speedy Trial Act.

## ENTIRETY OF AGREEMENT

25.     This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

(*Id.* at 1, 2-5 & 9-10 (emphasis in original)) Appearing before Leonard's signature line on page 11of the agreement is this paragraph: "I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume,[1] incorporated herein, is true and accurate in every respect,

---

[1]    The Factual Resume, which Leonard also signed, reads as follows:

The defendant, **DANIEL RAY LEONARD**, admits the allegations of Count Two of the Indictment.

### ELEMENTS OF THE OFFENSE

**LEONARD** understands that in order to prove a violation of Title 18, United States Code, Section 875(c), as charged in Count Two of the Indictment, the United States must prove:

| First: | That the defendant sent or transmitted in interstate commerce a communication containing a true threat to injure the person of another as charged; [and] |
|---|---|
| Second: | That the defendant did so knowingly and willfully. |

### OFFENSE CONDUCT

Defendant, **DANIEL RAY LEONARD**[,] admits in open court and under oath that on or about June 7, 2007, in the Southern District of Alabama, Southern Division, he used a computer at the University of South Alabama library to send an email from the address wpmiconcernedemployees@hotmail.com. The email was entitled, "Part IV." The defendant sent the email to several employees of the WPMI-15 television station in Mobile, Alabama, including Bob Franklin, Greg Peterson, Raquel Eatmon, Varion Walters, and Mike Rush. The email contained a

and that had the matter proceeded to trial, the United States could have proved

the same beyond a reasonable doubt." (*Id.*)

      4.     That same day, October 19, 2007, Leonard entered a counseled

----

threat to harm the recipients of the email who worked at WPMI, and the
defendant sent it knowingly and willfully. In part, the email stated,

> First off, having the police guarding the building is not
> going to help. There is no bomb, my guns are in the building and
> hidden very well. I promise if and when ready, Virginia Tech will
> look lame.

.     .     .

> Again, our DICTATOR [WPMI General Manager] Bob
> Franklin started all of this!!! He has made me at the point of no
> turning back. I have nothing else to lose in this fight!!! I will
> probably go down myself when I finally decide to use my guns in
> the building. I promise you they are well hidden and I will be
> ready to use them.

> Greg, I know where you live [] – you cannot hide and
> Raquel if you are still in your apt – . . . I got [] you covered too!!!

.     .     .

> I am sick and tired of it and my final actions will occur any
> day now and when everyone least expects!!

The defendant's email traveled in interstate commerce via
www.hotmail.com servers located in the state of California.

(Doc. 43, Factual Resume, at 1-2)

guilty plea to Count Two of the Indictment. (Doc. 78, Guilty Plea Transcript)

THE COURT:        State your name.

DEFENDANT:        Daniel Ray Leonard.

THE COURT:        Mr. Leonard, I need to tell you that you are now under oath, and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement. Do you understand that?

DEFENDANT:        Yes, Your Honor.

.        .        .

THE COURT:        What is your age, and how much education have you completed?

DEFENDANT:        I'm 37, and I have [a] college education.

THE COURT:        And Mr. Jordan, to the best of your knowledge, is your client fully competent to enter a valid plea today?

MR. JORDAN:        Yes, Your Honor.

THE COURT:        Mr. Leonard,  have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?

DEFENDANT:        I've been under the care of psychologist, Dr. Koch, and also my neurologist, Dr. Stubler.

THE COURT:        Are you currently under the influence of any drug or medication or alcoholic beverage of any kind?

DEFENDANT:        No, sir.

THE COURT:        Have you received a copy of the indictment in this case, had a full opportunity to read it an review it with your attorney, and do you understand the charge contained in the indictment?

DEFENDANT:        Yes, sir.

THE COURT:        Is it necessary that I read the indictment to you?

DEFENDANT:        No, sir.

THE COURT:        Are you fully satisfied with the representation that you've received from your attorney in this case, and have you discussed fully with your attorney all of the facts surrounding the charge?

DEFENDANT:        Yes, Your Honor.

THE COURT:        Now, I've been furnished a written plea agreement and factual resume, and these documents appear to have your signature at the end of each document. Did you, in fact, sign the document[s]?

DEFENDANT:        Yes, Your Honor.

THE COURT:        By signing the document, you are acknowledging that you have read it, you've discussed it with your attorney, that you understand the terms and conditions of the document, and that you agree with it. Is that true?

DEFENDANT:        Yes, Your Honor.

THE COURT:        Now, have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in

11

any way?

        DEFENDANT:      No, Your Honor.

        THE COURT:      The penalties that could be imposed are outlined on page three of the plea agreement. And this states if convicted of Count Two of the indictment, you could receive a term of imprisonment up to five years, a fine not to exceed $75,000, a supervised release term up to three years, and a mandatory special assessment of $100. Do you understand that?

        DEFENDANT:      Yes, sir.

        THE COURT:      And do you understand that if convicted of the charge in this case, you could lose valuable rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

        DEFENDANT:      Yes, Your Honor.

        THE COURT:      Now, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case?

        DEFENDANT:      Yes, Your Honor.

        THE COURT:      The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States have had the opportunity to challenge the facts reported by the probation officer. Do you understand that?

        DEFENDANT:      Yes, Your Honor.

THE COURT:      The sentence imposed might be different from any estimate your attorney or anyone else might have given you. Do you understand that?

DEFENDANT:      Yes, Your Honor.

THE COURT:      After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines. Do you understand that?

DEFENDANT:      Yes, Your Honor.

THE COURT:      Under some circumstances, you and the United States each may have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

You also have the right to waive your right to appeal, and I see by your plea agreement that you are waiving your right to appeal any sentence imposed with the following exceptions; and that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel. Do you understand that?

DEFENDANT:      Yes, Your Honor.

.      .      .

THE COURT:      . . . Parole has been abolished. If you are sentenced to prison, you would not be released on parole. Do you understand that?

13

DEFENDANT:        Yes, sir.

THE COURT:        If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT:        You have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to a trial by jury. During that trial, you would have the right to the assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one, the right to see and hear all of the witnesses and to have your attorney cross-examine them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States has met that burden.

If you are found guilty after a trial, you would then have the right to appeal that conviction to a higher court, and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you. Do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT:        If you plead guilty, however, and if the Court accepts your plea, there will be no trial; you will be waiving or giving up your right to a trial and all the other rights

14

that I just described. Do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT:        Also   included   in   your plea
agreement is a factual resume. And you've already told me that
you have read it and discussed it, you understand it and agree
with it. But the factual resume contains a statement of the
elements of the offense charged in Count Two of the indictment,
which states a violation of Title 18, United States Code, Section
875(c). And the elements of that offense are that you sent or
transmitted in interstate commerce a communication containing
a true threat to injure the person of another as charged; and that
you did so knowingly and willfully. Do you understand that
those are the elements of the offense to which you are pleading
guilty?

DEFENDANT:        Yes, Your Honor.

THE COURT:        And do you fully understand that if
there was a trial in this case, the United States would be required
to present sufficient evidence to prove each of these essential
elements beyond a reasonable doubt?

DEFENDANT:        Yes, Your Honor.

MR. JORDAN:        Judge, if I may inject here, the word
"true" in there, I talked to the U.S. Attorney about that. He
instructs me he got that from a jury instruction. I don't know if
that's from the statute. My only argument will be at some point
is that there was never an intent to carry out the threat.
Statutorily, we are pleading guilty because we are guilty of the
offense, but I think there's a distinction between making a threat
and the intent to carry it out. And I just want to make sure we're
not admitting any intent to carry out the threat. So, I don't want
Your Honor to be confused about that.

THE COURT:        All right. Mr. Sigler, you have any

15

response?

MR. SIGLER:      Your Honor, the element of the offense is that he did so knowingly and willfully, and that does track the language of the statute. I think that the word "true" comes from the jury instruction, how a reasonable person would be perceived to take a threat such as the Defendant lodged in this case in a series of emails.

The threat that is on page two of this factual resume speaks for itself, and I think that any jury would conclude beyond a reasonable doubt that it's a true threat for purposes of the statute.

THE COURT:      Okay. Mr. Leonard, also included in the factual resume is a statement of offense conduct.  Did you, in fact, commit the acts and do the things that you have admitted to in this statement of offense conduct?

DEFENDANT:      Yes, Your Honor.

THE COURT:      Then I find that the facts and acts to which you have admitted state a violation of the offense charged in Count Two of the indictment. How do you now plead to the charge in Count Two of the indictment, guilty or not guilty?

DEFENDANT:      Guilty.

THE COURT:      Mr. Jordan, are you aware of any reason that the Court should not accept Mr. Leonard's guilty plea at this time?

MR. JORDAN:      No, Your Honor.

THE COURT:      Then it is the finding of this Court in the case of United States of America versus Daniel Ray Leonard that you are fully competent and capable of entering an informed plea, that you were aware of the nature of the charge

16

and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and you are now adjudged guilty of that offense.

(*Id.* at 2-3, 3-7 & 8-12)

5.    During the sentencing hearing on April 10, 2008, the parties agreed that the appropriate offense level was 15 and that Leonard had a criminal history category of I, thereby "generating a sentencing guideline range of 18 to 24 months." (*See* Doc. 78, Sentencing Transcript, at 5) The defendant made a statement during the hearing,[2] as did several of his family

---

[2]        DEFENDANT:        Yes, sir. I would like to apologize to the people that are here from WPMI. I know I hurt you, and it was not done intentionally, and I would never hurt you in any way. And I chose to abuse the prescription drugs, and it affected my life and it affected others' life (sic) and it affected my family's life and has cost me dearly, and it will continue to cost me for the rest of my life.

And . . . God has forgiven me and my family has forgiven me and many of my friends have forgiven me, and I hope many of the people at the station will find a place in their heart at some point in time to forgive me as well.

I get distressed whenever they do reports, . . . how important the abuse of prescription drugs and what they do to someone's life and how it can affect not only you but others. And I want to also apologize to my family again for the hurt and embarrassment and the suffering they've been through this (sic) past several months because they don't deserve it. They don't deserve it at all. They've been good to me. So, I want to apologize to them.

members, and the defense put on the testimony of Clinical Psychologist Daniel

Koch[3] in an effort to influence the Court to give Leonard a probationary

_____

> And I want to apologize to my community because I let my community down. I want to be given a second chance to be a productive citizen and make this place a better place for the future.
>
> And I want to apologize to this Court, to you, Judge Steele, to the Prosecutors, to the law enforcement personnel for having me to stand here today. And I take all responsibilities for my actions.

(Doc. 78, Sentencing Transcript, at 39-40)

[3]    The gist of Koch's testimony was the following:

> Well, under extreme stress, he distorted a situation. He, his companion worked for the station, and he knew a number of the people and he heard a lot of dialogue about changes at the station, potential changes in the station which could lead to his companion leaving the region.
>
> I think a normal reaction to that would be while you might fear someone's transfer or loss as a companion, nevertheless . . . most of us would tend to view this as a business decision. In his confused state, using excessive medication, fearing the loss of a loved companion and increased use of medication, he got it distorted into his mind that this was sort of a demon, demonizing an individual who was doing something to his friend as opposed to a business decision.
>
> And then, of course, you know, you look at the action which he took. While I'm sure it was distressing to people at the station, I mean, there was [] no capacity for him to carry out such threats. I mean, it was an ineffectual annoyance, caused a lot of problems and a lot of trouble for people, but there was never any capacity for him to harm anyone or any real intent to do so, almost psychotic belief that I can intimidate someone into changing this business decision. And if we were looking at him at that time, you know, regarding mens rea, there would have been some serious questions.

sentence. After hearing from several individual victims associated with WPMI

(*id*. at 41-56) and the arguments of counsel (*id*. at 56-66), the following

occurred:

> THE COURT: . . . Mr. Leonard, I have considered all of the information that I have available to me in this case, and it's considerable, more than I normally see in a standard sentencing hearing that we have in this Court. But this is, I suppose, an extraordinary case, unlike any that I've seen before. The information that I've considered, of course, is contained in the Presentence Report, and that affords me a lot of information about the case and about you and about other matters that I need to consider in formulating what is to be a reasonable sentence in this case.
>
> I have also received and read each and every letter that has been submitted to me by Mr. Hanley, and I consider that information as well.
>
> I've heard the testimony of your friends and family here today. And I'm certainly grateful for all of you being here today, and it's important that I hear from you and that I be able to consider the testimony of, if you will, live witnesses as opposed to just reading letters in this case.
>
> I've considered the testimony of the employees of WPMI. And I will tell you that it's not often that we have victims that testify in Federal sentencing hearings, and so it's important that when that testimony is essential to formulating a reasonable sentence that I hear it rather than just read about it in a presentence report. So, thank you all for being here as well this

---

(*Id*. at 20-21; *see id*. at 58 ("[MR. HANLEY:] But it is important when you are sentencing Daniel to know that he . . . had no means to carry through [with] those threats, that he wasn't going to carry through those threats, that they were the bizarre rants of a person who was undergoing the situation that he was undergoing as described by Dr. Koch."))

morning, now into the afternoon, because it is helpful and essential that I hear from you.

This . . . is not an easy case. This is a difficult case because I have an individual who has personal history and characteristics that indicate up until this event in the summer of 2007, he had not been in trouble, had been a productive member of society. And then during the summer months of 2007, there was[], what we know today, a significant change in his personal history and characteristics which resulted in the commission of these very serious offenses.

.    .    .

The testimony here today from Dr. Koch indicates that there are some substantial medical issues that you are dealing with, Mr. Leonard, there's no question about that. That's the unrebutted testimony in this case. It's not being offered to excuse your conduct because if it was, Mr. Hanley would have filed a motion to have you evaluated and would have filed a plea of not guilty by reason of insanity. There's no indication that you are incompetent or we would have had proceedings to review your competency.

So, this testimony today is not being offered to show that you did not appreciate the criminality of your conduct and, therefore, were legally insane at the time of the offense, but it's offered to mitigate your conduct in an effort to receive a reduced sentence.

I've considered all of that information, and I'm struck by a couple of things here, and I think Mr. Sigler tried to bring it out from Dr. Koch in cross examination, and that is that while you were apparently suffering from these emotional or psychological problems, you were also going to work every day. And on one particular day, one of the days that you sent the e-mail message . . . it was a Tuesday, so I assume that you had been at work for that day and then left work, and by 6:00 that

evening, you were in the University of South Alabama library sending e-mail messages.

So, I'm somewhat struck by the inconsistency of the effect of this psychological or emotional problem. On the one hand, it appears that you were able to function normally, and on the other hand, it appears that you were functioning outside the normal realm of your day-to-day activities by sending these threatening and hateful e-mail messages. So, I have to discount Dr. Koch's testimony to some extent and cannot find that it mitigates your conduct in this case to any significant extent.

I am required under Section 3553(a) of Title 18 to consider a number of factors, and these factors are designed to direct me to find a sentence which is sufficient but not greater than necessary to comply with the purposes of sentencing. And the purposes that are defined in that statute is that I find a sentence that will reflect the seriousness of the offense, that will promote respect for the law, and provide just punishment, that will afford adequate deterrence to criminal conduct and protect the public from further crimes.

I'm also required to consider the Guidelines in this case, any pertinent policy considerations. And I have with regard to the policy considerations that Mr. Hanley has proffered in this case for a downward departure based on his arguments, the substance of his arguments, and also a sentence which avoids any unwarranted sentence disparities among defendants with similar records or similar conduct. And of course, the Guidelines are designed to eliminate the unwarranted sentencing disparities.

. . . I have to balance all of that information against your personal history and characteristics. I have to balance the nature and circumstances of the offense, and I've done that. I've assimilated all of this information here today.

And what I find to be overriding in this case is the extreme and senseless nature of the acts that you perpetrated

against the people at WPMI. There's no question that those acts caused significant and substantial disruption of business services, that it caused substantial expense in the amount of $36,000 primarily for security to provide some sense of order and security to the employees of that station.

The timing of these e-mails is particularly significant, and you even drew on that timing to give force to the threats that were sent through these e-mail messages. And the timing is that these came on the heels of a very tragic event at Virginia Tech and on the heels of other tragic events in our country where we've seen school massacres and we've seen mall and business place murders and sniper murders. With all of that going on in this country, everyone at WPMI had reason to fear, there's no question about it, and these e-mail messages played on that fear.

Mr. Hanley says that you had no intent to follow through on those threats, but if you believe the medical testimony in this case, you had no intent to send the e-mail messages. . . . I feel that but for the intervention of law enforcement in this case that certainly we would have seen more e-mail messages. I don't know how far it would have gone. I do know that it came to an end upon your arrest.

So, having considered the nature and circumstances of the offense and other elements and requirements of sentencing, it is the judgment of this Court that a custody sentence is appropriate under all of the facts and circumstances as I see it. The agreement between you and the Government is for a low-end guideline sentence in this case. With Mr. Hanley[] being afforded the ability to argue for something even less than that, which he's done and done well today, he's done everything he can do to try to convince this Court that something less than a guideline sentence is appropriate.

I cannot find that. I have to find that in this case, a guideline sentence is reasonable. I will afford you the benefit of your agreement. You came forward in this Court, you admitted

guilt, you accepted responsibility, you pled guilty, you eliminated the need for what would have been probably a lengthy trial in this case, and you have received and will receive credit for that acceptance of responsibility.

Having considered all of that information, and pursuant to the Sentencing Reform Act of 1984, it's the judgment of this Court that you, Daniel Ray Leonard, are hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 18 months as to Count Two.

The Court recommends that you be imprisoned at an institution where a residential, comprehensive, substance abuse treatment program is available and where mental health treatment and counseling is available.

Upon release from imprisonment, you shall be placed on supervised release for a term of three years as to Count Two. Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released.

While on supervised release, you shall not commit any Federal, state, or local crimes, you shall be prohibited from possessing a firearm or other dangerous device, and shall not possess a controlled substance. In addition, you shall comply with the standard conditions of supervised release as recommended by the Sentencing Commission and on record with this Court.

It is ordered you also make restitution to WPMI at the address on file in the amount of $36,198.50. Restitution is due immediately and payable in full and is to be paid through the Clerk of this Court. If full restitution is not immediately paid, any amount owing during a period of incarceration shall be subject to payment through the Bureau of Prisons Inmate Financial Responsibility Program.

As a special condition of supervised release, the Probation Office shall pursue collection of any balance remaining at the time of release in installments to commence no later than 30 days after the date of release. If restitution is to be paid in installments, the Court orders that you make at least minimum monthly payments in the amount of $100.

You are ordered to notify the Court of any material change in your ability to pay restitution, and the Probation Office shall request the Court to amend the payment schedule as appropriate. It is ordered that no interest accrue on this debt.

It's also ordered that you comply with the following special conditions of supervised release: that is, that you shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the Probation Office.

You are prohibited from making major purchases, incurring new credit charges, or opening additional lines of credit without approval of the probation officer until such time as the financial obligations imposed by this order have been satisfied in full. And you shall provide the Probation Office access to any requested financial information. You are also ordered to participate in a mental health treatment program as directed by the Probation Office.

The Court finds that you do not have the ability to pay a fine; therefore, no fine is imposed.

For the reasons given, the Court finds that the advisory guideline range is appropriate to the facts and circumstances of this case and provides for a sentence which addresses the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that you pay a special assessment in the amount of $100 on Count Two, which is due immediately.

24

You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea or your plea agreement. You have the right to apply for leave to appeal in forma pauperis, and the Clerk of Court will prepare and file notice of appeal upon your request. With few exceptions, any notice of appeal must be filed within 10 days of the date of judgment.

I note that there's a remaining count of the indictment. Does the Government have a motion?

MR. SIGLER:      We move to dismiss [it]. And I'd also like to ask about one other condition of supervised release. . . . We would request also as a special condition of his supervised release that he have no access to the internet.

.      .      .

THE COURT:      I think that's appropriate under the circumstances. I'll ask the Probation Office to enforce that as a term and condition of supervised release during the period of that supervised release.

Count One of the indictment is hereby dismissed on the Government's motion.

(*Id.* at 67-68 & 69-76; *see also* Doc. 65 (judgment in a criminal case entered

on April 25, 2008))

6.      On June 5, 2008, Leonard filed the present collateral attack on

his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 67; *see also*

Doc. 72) Therein, petitioner claims ineffective assistance of counsel due to

trial counsel's failure to advise him of his *mens rea* "defense" to the charge.

25

(Doc. 67, at 5; *see also* Doc. 72, at 1-2) In support of the petition, Leonard, through counsel, attached to his petition a June 2, 2008 letter from Clinical Psychologist Daniel Koch which reads, in relevant part, as follows: "It is my opinion, that for a period of time before and after the offense, that you[r] client Daniel Leonard was in a delusional state and lacked the ability to conform his conduct as he was operating under a delusion with impaired reality testing." (Doc. 67, Attached Letter Dated June 2, 2008)

7.     The United States filed its response in opposition on December 17, 2008. (Doc. 79) Therein, the government argues that petitioner's claim has no merit since a *mens rea* "defense" was not available to him given that he committed a general intent crime. (*Id*. at 5-9) Leonard has not filed a reply to the government's response despite being extended the opportunity to do just that. (*See* Doc. 77 ("Petitioner will have a period of thirty days from the date the respondent answers the petition to file a reply."))

## CONCLUSIONS OF LAW

1.     28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

26

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.      In this instance, Leonard contends that constitutionally ineffective assistance of trial counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[4] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366,

---

[4]      Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised.  *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[5]  In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[6]

　　　3.　　When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oates v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d

---

[5]　　"When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[6]　　It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

28

243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

    4.    Petitioner's sole claim raised in his § 2255 petition is that trial counsel provided ineffective assistance because he failed to inform him that he had available to him a *mens rea* "defense" to the charges of transmitting threatening communications in interstate commerce. (*See* Docs. 67 & 72)

> Defendant was induced by former counsel to enter a plea agreement when Defendant lacked mens rea to be legally responsible for the actions claimed in the indictment. Dr. Daniel L. Koch has written a letter, dated June 2, 2008, . . . wherein he addressed the issue of mens rea. He stated, "It is my opinion, that for a period of time before and after the offense, that you[r] client Daniel Leonard was in a delusional state and lacked the ability to conform his conduct as he was operating under a delusion with impaired reality testing." This information is critical in determining whether or not Daniel Leonard is guilty of the present charge.

(Doc. 67, at 5; *see also* Doc. 72, at 1 & 2 ("Since Defendant lacked the ability to conform his conduct at the time of the offense, *Mens Rea* did not exist and Defendant would not be guilty of the offense charged. Defendant should be entitled to have his guilty plea set aside and allow a new arraignment to take place. The U.S. Supreme Court reasoned that because *Mens Rea* is fundamental to a finding of criminal culpability, the concept of legal insanity

is a fundamental principle protected by constitutional due process and must be treated as a complete defense to a criminal act. . . . With the evidence of the report from Dr. Koch, Daniel Ray Leonard would not be guilty of the offense charged, and Defendant is entitled to have his guilty plea set aside and be allowed to enter a new plea."))

5.     The Eleventh Circuit recognized in *United States v. Cameron,* 907 F.2d 1051 (1990) that "[p]sychological evidence is relevant to *mens rea* only when the defendant is charged with a specific intent crime." *Id.* at 1063 n.20 (citations omitted);[7] *see also United States v. Peralta*, 930 F.Supp. 1523, 1525 (S.D. Fla. 1996) ("*Cameron* unequivocally holds that '[p]sychological evidence is relevant to mens rea *only when the defendant is charged with a specific intent crime*.'"), *aff'd*, 31 Fed.Appx. 201 (11th Cir. 2001) (table). Accordingly, the question this Court must first answer in determining whether

---

[7]     *Cameron* makes clear that there is no *mens rea* affirmative defense; instead, psychological evidence touching upon a defendant's state of mind with respect to actions he took at the time the charged offense was committed "goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime–at least when specific intent is at issue." 907 F.2d at 1063 (footnote omitted); *compare id. with* BLACK'S LAW DICTIONARY, at 1006 (8th ed. 2004) ("The state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime; criminal intent[.] . . . *Mens rea* is the second of two essential elements of every crime at common law, the other being the *actus reus*."). Therefore, while petitioner here talks in terms of a *mens rea* defense it is clear that what he means is that the *mens rea* element of the crime charged did not exist because he lacked the ability to conform his conduct at the time of the offense. (*See* Doc. 72, at 1 ("Since Defendant lacked the ability to conform his conduct at the time of the offense, *Mens Rea* did not exist and Defendant would not be guilty of the offense charged.").

trial counsel provided ineffective assistance, is whether the crime for which petitioner pled guilty, that is, transmitting threatening communications in interstate commerce, in violation of 18 U.S.C. § 875(c), is a specific-intent crime or a general-intent crime.

6.    The relevant statue provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c). There is no *mens rea* element contained in 18 U.S.C. § 875(c). *United States v. DeAndino*, 958 F.2d 146, 147-148 (6th Cir.) ("A criminal statute such as 18 U.S.C. § 875(c) does not contain a specific mens rea element."), *cert. denied*, 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 874 (1992). While the Eleventh Circuit has not specifically addressed the issue of whether § 875(c) is a specific-intent crime or a general-intent crime, there is every reason to believe that the appellate court will ultimately specifically find that this statute sets forth a general-intent crime given clear past precedent which provides that "[w]here no specific intent element is apparent on the face of the statute, the crime is one of general intent." *United States v. Ettinger*, 344 F.3d 1149, 1158 (11th Cir. 2003) (citation omitted); *see also United States v. Campa*, 529 F.3d

980, 999 (11th Cir. 2008) ("The silence of the statute is dispositive: 'Where no specific intent element is apparent on the face of the statute, the crime is one of general intent.' . . . '[A] defendant need not intend to violate the law to commit a general intent crime, but he must actually intend to do the act that the law proscribes.'").[8] In truth, all circuit courts to have specifically addressed the issue, save one, have determined that § 875(c) sets forth a general-intent crime. *United States v. Whiffen,* 121 F.3d 18, 21 (1st Cir. 1997) ("Having established that section 875(c) requires only a general intent, we are able to engage each of Whiffen's specific claims."); *United States v. Myers*, 104 F.3d 76, 81 (5th

---

[8]     The undersigned is of the opinion that the Eleventh Circuit has already implicitly recognized that § 875(c) is a general-intent crime. *Compare United States v. Alaboud*, 347 F.3d 1293, 1296 & 1296-1297 (11th Cir. 2003) ("A conviction under § 875(c) requires proof that the threat was made 'knowingly and intentionally.' . . . [T]he inquiry is whether there was 'sufficient evidence to prove beyond a reasonable doubt that the defendant intentionally made the statement under such circumstances that a reasonable person would construe them as a serious expression of an intention to inflict bodily harm[.]' . . . Thus, the offending remarks must be measured by an objective standard.") *with Darby, infra*, 37 F.3d at 1066 ("[W]e conclude that section 875(c) requires only general intent to threaten. In other words, to establish a violation of section 875(c), the government must establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat. Whether a communication in fact contains a true threat is determined by the interpretation of a reasonable recipient familiar with the context of the communication. The government does not have to prove that the defendant subjectively intended for the recipient to understand the communication as a threat.") *and DeAndino, supra*, 958 F.2d at 148 ("In regard to the present case, if the threat element of section 875(c) has a mens rea requirement of general intent, whether the communication is a 'true threat,' and hence criminal, would not be determined by probing DeAndino's subjective purpose, but instead would be determined objectively from all the surrounding facts and circumstances.").

Cir.) ("Because § 875(c) contains nothing suggesting a specific intent requirement, it defines only a general intent offense."), *cert. denied*, 520 U.S. 1218, 117 S.Ct. 1709, 137 L.Ed.2d 834 (1997); *United States v. Himelwright,* 42 F.3d 777, 783 (3rd Cir. 1994) ("[S]ection 875(c) requires proof of a defendant's general intent to threaten injury, but does *not* require proof of a specific intent to injure another or the present ability to carry out the threat."); *United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994) ("[W]e conclude that section 875(c) requires only general intent to threaten."), *cert. denied*, 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995); *see also United States v. Stewart,* 411 F.3d 825, 827-828 (7th Cir.) (analysis concludes that § 875(c) is a general-intent crime), *cert. denied*, 546 U.S. 980, 126 S.Ct. 550, 163 L.Ed.2d 466 (2005); *United States v. Francis*, 164 F.3d 120, 121-123 (2nd Cir. 1999) (same);  *but cf. United States v. Twine*, 853 F.2d 676, 680 (9th Cir. 1988) ("Today we hold that the showing of an intent to threaten, required by §§ 875(c) and 876, is a showing of specific intent.").

7.      Based upon the foregoing, the undersigned recommends that the Court find that the psychological evidence from Dr. Koch, which has been presented in this petition, is not relevant to *mens rea* in this case since petitioner was charged with, and pled guilty to, a general-intent crime.

33

Accordingly, petitioner's trial attorney obviously was not deficient in failing to inform his client of a non-existent "defense" to a crime for which he ultimately pled guilty.

8.     In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Leonard's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 28th day of January, 2009.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

34

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY        
**UNITED STATES MAGISTRATE JUDGE**
